565 A.2d 187

The COUNTY OF CENTRE, BOARD OF ASSESSMENT APPEALS and Jeffrey M. Bower, Martin L. Horn and John T. Saylor, Members of the Board of Commissioners and of the Board of Assessment Appeals, Appellants,

v.

The PENNSYLVANIA STATE UNIVERSITY, Appellee.

Commonwealth Court of Pennsylvania.

Argued April 5, 1989.

Decided Oct. 12, 1989.

186

Thomas B. Schmidt, III, with him, Donna L. Fisher, Pepper, Hamilton & Scheetz, Harrisburg, for appellants.

Delbert J. McQuaide, with him, James M. Horne and Paul J. Tomczuk, McQuaide, Blasko, Schwartz, Fleming & Faulkner, Inc., State College, for appellee.

Terry J. Williams, Greensburg, Miller, Kistler, Campbell, Miller & Williams, Inc., Bellefonte, for amicus curiae, Borough of State College and Townships of College, Ferguson, Harris and Patton.

John R. Miller, Jr., Miller, Kistler, Campbell, Miller & Williams, Inc., Bellefonte, for amicus curiae, State College Area School Dist.

Before CRUMLISH, Jr., President Judge, and CRAIG, DOYLE, COLINS, PALLADINO, McGINLEY and SMITH, JJ.

DOYLE, Judge.

## INTRODUCTION

This is an appeal by the County of Centre, Board of Assessment Appeals, and Jeffrey M. Bower, Martin L. Horn, and John P. Saylor, who are members of the Board of Commissioners and of the Board of Assessment Appeals (collectively Appellants) from an order of the Court of Common Pleas of Centre County which granted a motion for summary judgment filed by the Pennsylvania State University (Penn State). The motion was granted on the

basis that the 1939 Centre County Court of Common Pleas opinion in *Pennsylvania State College v. County of Centre,* (No. 2 Equity November Term 1937, filed August 24, 1939), operated to bar the present action under the legal principles of res judicata and collateral estoppel. Specifically, the trial court held that *Pennsylvania State College,* which was never appealed, had held that for real estate tax purposes Penn State was an agency of the Commonwealth and, hence, could not be taxed by Appellants herein absent specific statutory authority for them to do so.

The present lawsuit began when, by notice dated June 28, 1984, the County assessed and attempted to tax, for real estate purposes for the 1985 tax year, Penn State property on which the Midstate Bank & Trust Company (Bank) has an office. The space in question is leased by Penn State to the Bank. Several other banks also maintain automatic teller machines on Penn State property and Appellants are also attempting to tax those portions of Penn State's property. Upon receipt of the June 28 notice Penn State advised Appellants that they lacked the legal power or authority to assess or tax Penn State's property. Penn State, as a precautionary measure, filed an appeal with the Centre County Board of Assessment Appeals (Board). Communication between the parties followed and the Board determined to delete an assessment it had levied against the Penn State book store and that issue is not before us. The Board, however, maintained its position with respect to the Bank office and the automatic teller machines. Consequently, Penn State filed the present action in equity contending, *inter alia,* that it will suffer irreparable harm if it is forced to adjudicate its position before the Board prior to a court deciding the legal question of whether Appellants have the power and authority to assess and tax its realty. As relief Penn State sought from the trial court an order preliminarily enjoining Appellants from conducting a hearing before the Board; an order preliminarily enjoining the assessments made by Appellants and enjoining them from taking any further action to assess or tax Penn State until a

final determination on the merits; and, subsequent to a hearing, an order permanently enjoining Appellants from assessing or taxing Penn State's property and a declaration that Appellants and their successors are without power to tax or assess Penn State's property. Preliminary objections to the complaint were filed and overruled. Penn State then filed a motion for summary judgment which the trial court granted and the instant appeal ensued.

On appeal here Appellants contend that *Pennsylvania State College* does not operate to bar their present attempt to assess and tax Penn State. We begin our analysis with an examination of that opinion.

## THE 1939 LITIGATION

*Pennsylvania State College* had its genesis in an attempt by Centre County and several local municipalities to assess and tax certain portions of Penn State property for the years 1935, 1936 and 1937. There, as here, Penn State sought injunctive relief. The specific property in issue consisted of nine tracts of farmland which were, during the years in question, used by Penn State as an agricultural laboratory for student instruction and agricultural experimentation and research with the ultimate goal being the advancement of agricultural science. The results of experiments conducted on the farms were disseminated to the public and filed with the Federal and State Departments of Agriculture.

In *Pennsylvania State College,* the court reviewed the history of Penn State and specifically found:

(1). The plaintiffs [sic], the Pennsylvania State College, was created as a corporate body by the Pennsylvania Legislature by the Act of February 22, 1855, P.L. 46, as 'an institution for the education of youth in the various branches of science, learning and practical agriculture as they are connected with each other, by the name, style and title of "the Farmers' High School of Pennsylvania." '
In 1862 the name of the College was changed to 'The

Agricultural College of Pennsylvania' and in 1874 to 'The Pennsylvania State College', under which name the plaintiff has ever since operated.

(2). The body corporate consists of the Board of Trustees, of which the Governor of the Commonwealth, the Superintendent of Public Instruction, the Secretary of Agriculture and the President of the College are ex officio members, and of the remaining members six are appointed by the Governor and confirmed by the State Senate. Other members of the Board of Trustees are elected by the Alumni and others by delegates from the County Agricultural and Engineering Societies.

(3). The plaintiff was founded by the Commonwealth of Pennsylvania and is endowed and maintained by the public, that is, by appropriations from the Pennsylvania Legislature and the Congress of the United States.

(4). The plaintiff depends for its operation upon the appropriations made to it by the State and Federal Governments. It has no other source of revenue, except such incidental revenue as comes to it from operation of its educational plant. Various nominal charges, such as laboratory charges, are made to students using different facilities, but no tuition is charged to students residing in Pennsylvania, the Act of May 20, 1857, P.L. 617, providing that the admissions to the school from the several counties shall be in proportion to their number of taxables, respectively, if such number shall apply. Occasionally private donations are made to the Board of Trustees for various specific projects.

(5). The entire revenue derived by Pennsylvania State College is applied to the support of and to increase the efficiency and facilities thereof, and to the repair and the necessary increase of grounds and buildings thereof.

(6). The powers and duties conferred upon the plaintiff by the Pennsylvania Legislature are those usually involved in the management and operation of an education institution, particular stress being laid upon the high regard of the Legislature for the agricultural interest of

the State, and among powers and duties expressly conferred are the operation of 'experimental farms', the conducting of 'agricultural experiment stations', the conducting of 'agricultural extension work' for the purpose of bringing directly to the farmers of Pennsylvania the results of the agricultural experiments, and the distribution of reports to the State and Federal Governments and to the public concerning the results of the agricultural research of the College.

(7). The Congress of the United States, by the Land Grant Act of 1862, offered a grant of a portion of the public lands to each of the states not then in rebellion, the proceeds of which were to be sold by the state and invested as a perpetual fund, the income of which was to be 'inviolably appropriated by each state.... to the endowment, support and maintenance of at least one college where the leading object shall be, without excluding other scientific and classical studies, and including military tactics, to teach such branches of learning as are related to agricultural and the mechanical arts, in such manner as the legislatures of the states may respectively prescribe, in order to promote the liberal and practical education of the industrial classes in the several pursuits and professions of life.' The congressional statute required the acceptance of the state and imposed certain conditions upon the grant, among which was that the state should within five years from the acceptance of the statute provide at least one college meeting the requirements thereof.

(8). This congressional grant was accepted by the State of Pennsylvania by Act of April 1, 1863, P.L. 213, which act recited that the state had already established the plaintiff as a college meeting the requirements of the congressional grant and designating the plaintiff as the beneficiary of the grant.

(9). The Congress of the United States has from time to time subsequent to the original grant, by various statutes, made appropriations to the several states for the

purpose of the more complete endowment and support of such state colleges, of establishing and maintaining agricultural experiment stations at the various state colleges, and of supporting cooperative agricultural work between the various state colleges and the United States Department of Agriculture. Each of these Federal statutes has been duly accepted on behalf of the Commonwealth of Pennsylvania by the Legislature, the plaintiff being specifically designated as the proper institution to receive the congressional appropriations.

*Pennsylvania State College*, slip op. at 2–6. (Material deleted in original.) Based upon this history the court found that:

(17). The said farm lands are necessary for the proper discharge of the public functions imposed upon the plaintiff by the statutes and constitute an integral part of its educational plant.

(18). The said farm lands are not operated for the purpose of making a profit, but strictly for the purpose of performing the public functions delegated to the plaintiff by the State Legislature.

(19). As a necessary consequence of the operation of these experimental farms agricultural commodities are produced and the plaintiff receives some revenues from the sale thereof, which revenues represent the salvage from the experimental research work and are used to defray a part of the necessary expenses of the institution in performing its public functions.

(20). The revenues derived from the sale of the produce of said experimental farms are a mere incident to, and a by-product of, the legitimate use of the property directly for the necessary purposes contemplated by the statutes governing the plaintiff.

Slip op. at 8–9.

In *Pennsylvania State College*, Penn State argued to the court (1) that it is a public agency of the Commonwealth whose existence is solely for the purpose of performing educational and experimental functions and (2) that it is an

educational institution and, as such, a purely public charity. Accordingly, it contended that it was statutorily and constitutionally exempted from the tax sought to be imposed upon it.

The court concluded and so held that Penn State was an agency of the Commonwealth and was exempt from taxation on that basis. It also wrote, however, that the tax exemption "could rest upon another ground." *Id.* at 17. It then proceeded to decide that Penn State was also entitled to an exemption on the basis that it was a purely public charity. Its conclusions of law addressed both of these grounds. An injunction was entered[1] and no appeal was taken.

## THE CURRENT LITIGATION

In the context of the present litigation Penn State maintains that the 1939 holding that it constitutes an agency of the Commonwealth operates to bar the present action under principles of res judicata and collateral estoppel. The trial court agreed and, accordingly, granted Penn State's motion for summary judgment. Appellants then appealed to this Court. In determining whether a motion for summary judgment should be granted the relevant inquiry is whether there exists any genuine issue of material fact and

---

1. In pertinent part the decree read:
 (2). The County Treasurer of Centre County is enjoined and restrained from selling the tracts of farm land owned by the plaintiff, situate in College Township, Centre County, for non-payment of the taxes for the year 1935; and said Treasurer and all other officials are hereby restrained and enjoined from the sale of said lands, or any other proceedings to collect the taxes assessed upon the same for the years 1936 and 1937.
 (3). The assessment and levy or [sic] taxes upon said tracts of farm land in College Township owned by the plaintiff, and the return of same for non-payment of taxes and further proceedings based thereon so far as the same concerns the years 1935, 1936 and 1937, are hereby found to be illegal, void and of no effect.
 (4). The defendants and their successors are hereby restrained and enjoined from the further assessment and attempt to subject the levy of taxes on the said tracts so long as the same continue to be owned by the plaintiff and used substantially as during the years 1935, 1936 and 1937.
 Slip op. at 28.

whether the moving party is entitled to judgment as a matter of law. Pa.R.C.P. No. 1035(b). Summary judgment should never be entered in doubtful cases. *Simpson v. Pennsylvania Board of Probation and Parole*, 81 Pa.Commonwealth Ct. 432, 473 A.2d 753 (1984).

## THE DISTINCTIONS BETWEEN THE TWO TRIAL COURT OPINIONS AND THE DISTINCTIONS BETWEEN THE TWO TAX EXEMPTIONS

Initially we recognize that while *Pennsylvania State College* rests on independent grounds—the Commonwealth agency exemption and the charitable (educational) exemption, the case under review now was determined only on the basis of the Commonwealth agency exemption.[2] Thus, there is no need for us to directly consider the charitable (educational) exemption. Because, however, there is a subtle, but vital, difference between the two exemptions and how the legislature and courts have dealt with each of them, and, because Appellants appear to blur the distinctions between the two exemptions in the arguments made to this Court, we shall review the substantive law for each of the exemptions.

### A. *The Commonwealth Agency Exemption*

It is well settled in this Commonwealth that a Commonwealth agency is exempt from local real estate tax in the absence of a statute clearly authorizing the municipality to tax state-owned property. *Harrisburg School District Tax Appeal*, 53 Pa.Commonwealth Ct. 299, 417 A.2d 848 (1980). As Judge MacPhail wrote:

> Since we affirm on the basis of SEPTA[3] and its supporting cases, we shall limit our discussion herein to the

2. Pursuant to statutory and case law we note that both of these bases have been denominated as "exemptions," not "exceptions."

3. In *Southeastern Pennsylvania Transportation Authority v. Board for the Assessment and Revision of Taxes of Delaware County*, 13 Pa.Commonwealth Ct. 207, 319 A.2d 10 (1974), we held that real estate owned by SEPTA, an agency and instrumentality of the Commonwealth, could not be subjected to local taxation because of the absence of a

principles of law underlying that decision as they relate to appellants' arguments. We begin with a restatement of a concept basic to the government of the Commonwealth, that the power of taxation lies solely with the General Assembly of the Commonwealth, and that without a grant or delegation of power to tax by acts of the General Assembly, a municipality has no power to tax. To determine whether a municipality possesses the power to tax in a certain area, one must look to the acts of the General Assembly. The provisions of those acts are to be strictly construed and the grant of such power may not be found by implication.

Another basic presumption clearly established over the course of the Commonwealth's history is that property owned by the sovereign, the Commonwealth, is not ordinarily subject to taxation. 'The legislators did not intend to upset the orderly processes of government by allowing the sovereign power to be burdened by being subjected to municipal taxes. Legislative enactments presumptively affect only private rights and do not embrace the rights of a sovereign unless the sovereign is explicitly designated or clearly intended.'

From these two principles arises the rule that state-owned property cannot be taxed by a municipality in the absence of a statute clearly authorizing it to do so.

. . . .

The conclusion to which we adhered in SEPTA, *supra,* and in the very recent decision of this Court in *Owen J. Roberts School District Appeal,* 45 Pa.Commonwealth Ct. 135, 405 A.2d 1314 (1979) [4], that land owned by the Commonwealth is not subject to tax, *whether or not it is used for a public purpose,* is consistent with the Pennsylvania Constitution. Section 2(a)(iii) of Article VIII provides that:

specific delegation of taxing authority by the Pennsylvania General Assembly to the local taxing authorities.

**4.** This case was reversed on other grounds. *See* discussion *infra.*

(a) The General Assembly may by law exempt from taxation:

(iii) That portion of public property which is actually and regularly used for public purposes.

Pa.Const. Art. VIII, § 2(a)(iii).

Section 5 of Article VIII further provides that:

All laws exempting property from taxation, other than the property above enumerated shall be void.

Pa.Const. Art. VIII, § 5.

We construe these sections of our Constitution to apply only when a power to tax first exists. In other words, if the General Assembly does not specifically delegate power to municipalities or other local bodies to tax an instrumentality of the Commonwealth, such as the Authority, the General Assembly need not make use of exemptions allowed by Section 2(a)(iii) of Article VIII. By holding that all public property owned by the Authority is not subject to taxation (because of the absence of a specific statutory delegation of taxing power), we are not unconstitutionally extending the exemption provision of Section 2(a)(iii) of Article VIII, as is prohibited by Section 5 of Article VIII. Rather, we are simply stating that no taxing power exists.

Our holding that Appellants possess no power to tax the Authority eliminates the need to discuss Appellants' second argument, that the Authority's real estate did not fall totally within the statutory exemption.

*Id.* 53 Pa.Commonwealth Ct. at 303–04, 306–07, 417 A.2d at 850–51, 852 (citations omitted, emphasis added).

Further, we have held that The Fourth to Eighth Class County Assessment Law, Act of May 21, 1943, P.L. 751, *as amended,* 72 P.S. §§ 5453.101–5453.706, gives no such specific grant of authority, *Harrisburg School District,* and that what is commonly referred to as the General County Assessment Law,[5] which Appellants here rely upon, is identical to the County Assessment Law for purposes of the

---

5. Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §§ 5020–101 through 5020–602.

grant of taxing authority and the exemptions relied upon. *Harrisburg School District,* 53 Pa.Commonwealth Ct. at 304, n. 1, 417 A.2d at 851 n. 1.

## B. The Charitable (Educational) Exemption

The substantive law dealing with the charitable (educational) exemption is found in our Constitution and statutory laws. The *Pennsylvania State College* court, in reaching its determination that Penn State not only was a Commonwealth agency exempt from all local taxation, but also was exempt because the university was an institution of purely public charity and that the farmlands were "public property used for public purposes," [6] relied upon Article IX, Section 1 of the Pennsylvania Constitution and Section 204(c) and (g) of the General County Assessment Law, 72 P.S. § 5020–204(c), (g). First, we examine the relevant constitutional provisions as they then existed. Article IX, Section 1 of the Pennsylvania Constitution [7] then provided:

**Taxes to be uniform; exemptions.**

All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the General Assembly may, by general laws, *exempt from taxation public property used for public purposes,* actual places of religious worship, places of burial not used or held for private corporate profit, *institutions of purely public charity* and real and personal property owned, occupied, and used by any branch, post, or camp of honorably discharged soldiers, sailors, and marines (emphasis added).

Section 204 of General County Assessment Law, 72 P.S. § 5020–204, pertinently provided as follows:

The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

**6.** Conclusion of law No. 5, slip op. at 26.

**7.** A 1968 amendment amended and renumbered this constitutional provision. It now appears in Article VIII, Sections 1 and 2. *See Harrisburg School District.*

. . . .

(c). All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose;

. . . .

(g). All other public property used for public purposes, with the ground thereto annexed and necessary for the occupation and enjoyment of the same. . . .

From the above-quoted language, it can be gleaned that the charitable (educational) exemption in 1939 precluded a local authority from taxing an entity which was charitable (educational) in nature but only to the extent that the property was used for public purposes. There is no doubt that the tracts of farmland with which the *Pennsylvania State College* Court was concerned fit this criteria. Whether the property in question in the instant litigation does so (university property leased to banks for banking purposes) is an issue we need not decide since the charitable (educational) exemption was not a basis for the trial court's holding below. But, we do observe that the fact that the farmland fit within the exemption in 1939 would not appear to be a basis for holding that the property in question here would, *a fortiori*, fit within the exemption since we see nothing in the facts of this case which would demonstrate that a charitable (educational) purpose is served by the Bank property. Further, the facts or "matters in issue" pertaining to the farmland would be different from those pertaining to the Bank property. And, thus the doctrine of collateral estoppel (which we discuss more fully below) would not appear to bar imposition of the tax in this case under the charitable (educational) exemption.

As previously noted, it is clear that the *Pennsylvania State College* court concluded that Penn State was a Commonwealth agency and grounded its decision basically on that reasoning. The trial judge in that case wrote:

> Once the conclusion is reached that the plaintiff corporation [Penn State] is an agency of the state government, it follows that its property is exempt from taxation.
>
> . . . .
>
> [But] [w]hile the conclusion that The Pennsylvania State College is essentially a corporation carrying on public functions disposes of the whole controversy here, still this exemption *could* rest upon another ground.

Slip op. at 15, 17 (citations omitted and emphasis added). The court below in the instant matter accordingly determined that it was bound under the principles of res judicata and collateral estoppel from reconsidering the issue, and, thus held that Appellants could not tax Penn State. Our task is to review the propriety of that determination. Having made it clear that the *only* issue before us is whether the trial court properly applied the doctrines of res judicata and collateral estoppel with *respect to the Commonwealth agency exemption,* we proceed to examine those doctrines.

## THE RES JUDICATA DOCTRINE

In order for res judicata (issue preclusion) to bar a subsequent action, there must be a concurrence of four conditions:

1) Identity in the thing sued upon or for;
2) Identity of the cause of action;
3) Identity of persons and parties to the action; and
4) Identity of the quality or capacity of the parties suing or sued.

*McCarthy v. Township of McCandless,* 7 Pa.Commonwealth Ct. 611, 617, 300 A.2d 815, 820 (1973). Only conditions one and two are in contest here.

■ Appellants contend that *Pennsylvania State College* dealt only with whether the nine tracts of farmland were

subject to taxation. Of course, that case did not involve a bank's office property or automatic teller machines. Appellants, thus, argue that there is no identity of the thing sued upon or for and, hence, that the issue here has not been precluded. Penn State contends, however, that the *Pennsylvania State College* court held that it is an agency of the Commonwealth and that its property is, thus, totally exempt from tax. Appellants' argument demonstrates what we spoke of earlier—a mixing of the legal criteria relevant for the two different exemptions. While the tracts of farmland are different than the bank property and this distinction is relevant under the charitable (educational) exemption, we do not believe that the distinction has legal significance under the agency exemption. Penn State (all of it) either is or is not a Commonwealth agency, and, on the basis of *stare decisis,* either is or is not taxable—regardless of the property subject to litigation.

Appellants contend further, however, that the causes of action in the two lawsuits are not identical. Identical causes of action exist "when in both the old and the new proceedings the subject matter and the ultimate issues are the same." *McCarthy,* 7 Pa.Cmwlth. at 618, 300 A.2d at 820 (emphasis omitted). Here, the subject matter, tax assessment, and the ultimate issue, exemption on the basis of being a Commonwealth agency, *are* the same. Thus, res judicata operates to bar this action and, once having determined this, no purpose would be served by additionally addressing the issue of collateral estoppel.

### MULTIPLE GROUNDS FOR DECISION

Appellants urge upon us that the doctrine of res judicata and collateral estoppel—or issue preclusion in the broad sense—should not apply to this case. As explained earlier, the *Pennsylvania State College* court based its conclusion upon two different theories—the Commonwealth agency theory and the charitable (educational) exemption theory. Where a trial court presents alternative determina-

tions to support its judgment, the Restatement (Second) of Judgments at Section 27 comment (i) directs:

> *i. Alternative determinations by court of first instance.*
>
> If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is *not* conclusive with respect to either issue standing alone....
>
> It might be argued that the judgment should be conclusive with respect to both issues. The matter has presumably been fully litigated and fairly decided; the determination does support, and is in itself sufficient to support, the judgment for the prevailing party; and the losing party is in a position to seek reversal of the determination from an appellate court. Moreover, a party who would otherwise urge several matters in support of a particular result may be deterred from doing so if a judgment resting on alternative determinations does not effectively preclude relitigation of particular issues.
>
> There are, however, persuasive reasons for analogizing the case to that of the nonessential determination.... First, a determination in the alternative may not have been as carefully or rigorously considered as it would have if it had been necessary to the result, and in that sense it has some of the characteristics of dicta. Second, and of critical importance, the losing party, although entitled to appeal from both determinations, might be dissuaded from doing so because of the likelihood that at least one of them would be upheld and the other not even reached. If he were to appeal solely for the purpose of avoiding the application of the rule of issue preclusion, then the rule might be responsible for increasing the burdens of litigation on the parties and the courts rather than lightening those burdens.
>
> There may be causes where, despite these considerations, the balance tips in favor of preclusion because of the fullness with which the issue was litigated and decid-

ed in the first action. But since the question of preclusion will almost always be a close one if each case is to rest on its own particular facts, it is in the interest of predictability and simplicity for the result of nonpreclusion to be uniform. (Emphasis added.)

Our research has disclosed no Pennsylvania case law which has considered whether the position set forth in the Restatement (Second) of Judgments, Section 27 comment (i), should be embraced. To the contrary, we have found support for the opposite position set forth in Restatement (First) of Judgments, § 69 comment (b) adopted by the trial court in *Dickson Estate*, 14 Pa.D. & C.2d 741 (1958), *aff'd on other grounds*, 396 Pa. 371, 152 A.2d 680 (1959). The *Dickson* Court opined:

> If a case is decided on two different grounds, it is authority for both propositions. If it could be argued that ground 'a' is dictum because the case was also decided on ground 'b', then the same could be said of ground 'b' and we would end up with a case with two dicta and no decision.

14 Pa.D. & C.2d at 742. *Accord Mellon Bank v. Rafsky*, 369 Pa.Superior Ct. 585, 535 A.2d 1090 (1987) *petition for allowance of appeal granted*, 518 Pa. 650, 544 A.2d 961 (1988) (collateral estoppel bar applied where there were alternative determinations). We find this reasoning to be persuasive and, hence, adopt the First Restatement position.

## CHANGES IN THE LAW

 Appellants also argue that there has been a change in the law which justifies allowing the instant case to be litigated. We note that certain constitutional and statutory amendments have served to limit the public property and charitable (educational) tax exemptions to those portions of the property "actually and regularly used" for public or charitable purposes. *See* Article VIII, Section 2 of the Pennsylvania Constitution and the 1972 amendment to Section 204 of the General County Assessment Law.[8] An

---

8. Section 1 of Act of September 22, 1972 P.L. 868.

attempt to tailor more narrowly the exemption is thus evident. We do not, however, see how this impacts upon the legal question of whether Penn State is a Commonwealth agency, for, as we explained in *Owen J. Roberts School District Appeal*, 45 Pa.Commonwealth Ct. 135, 405 A.2d 1314 (1979), *rev'd on other grounds*, 500 Pa. 465, 457 A.2d 1264 (1983) (lower courts incorrectly assumed Commonwealth tax exempt ownership of the property merely from the transfer) where the specific subject property was a tract of 162 acres of land containing various buildings donated to the "Commonwealth of Pennsylvania for and on behalf of West Chester State College," *id.*, 45 Pa.Commonwealth Ct. at 136, 405 A.2d at 1315, on the authority of *SEPTA,* "we hold that the land owned by the Commonwealth is not subject to tax, whether or not it is used for a public purpose." *Id.*, 45 Pa.Commonwealth Ct. at 140, 405 A.2d at 1316–17. We note that the Pennsylvania Supreme Court indicated in *Owen J. Roberts*, despite reversing this Court on other grounds, that real estate which is owned by the Commonwealth cannot be taxed by a political subdivision absent express statutory authority to do so.

Appellants also cite to *Brush v. Pennsylvania State University Board of Trustees of the Pennsylvania State University*, 249 Pa.Superior Ct. 164, 375 A.2d 810 (1977), wherein the Superior Court, in an evenly divided decision, held, *inter alia*, that Penn State was not a Commonwealth agency for purposes of the Appellate Court Jurisdiction Act of 1970,[9] and *Mooney v. Temple University of the Commonwealth System of Higher Education Board of Trustees*, 448 Pa. 424, 292 A.2d 395 (1972), which held that Temple was not a Commonwealth agency for purposes of the Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S.

9. Act of July 31, 1970, P.L. 673, 17 P.S. §§ 211.101–211.510, repealed by Section 2(a) of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, 42 P.S. § 20002(a) [1443]. The provisions pertaining to appellate jurisdiction now appear in Sections 701–764 of the Judicial Code, 42 Pa.C.S. §§ 701–764. The opinion in support of reversal discusses the jurisdiction issue; the opinion in support of affirmance does not. But, inasmuch as the case was never transferred to this Court, we must assume a majority agreed on the jurisdictional question.

§§ 66.1–66.4 (Inspection and Copying of Records Act). We do not, however, view these latter "changes in the law" as legally relevant since it is well settled that an entity may be an agency of the Commonwealth for some purposes but not for others. *See, e.g., London Grove Township v. Southeastern Chester County Refuse Authority,* 102 Pa.Commonwealth Ct. 9, 517 A.2d 1002 (1986), *petition for allowance of appeal granted,* 515 Pa. 589, 527 A.2d 548 (1987), and cases cited therein.

## CHANGES IN THE FACTS

Finally, Appellants contend that the facts have changed. They allege that Penn State's reliance upon state and federal funding has been greatly reduced and that students now pay tuition to attend. We can find no legal authority for the proposition that a subsequent change in *facts* (as opposed to law) operates to defeat the bar of res judicata and none has been cited to us. Accordingly, we reject this argument.

## CONCLUSION

Finally, we wish to emphasize the narrow holding of this case. We do not suggest that Penn State is an agency of the Commonwealth for *all* purposes, but only for local real estate tax exemption purposes. And, we decide that question only on the basis that the issue was previously determined in 1939 and, hence, the doctrine of res judicata precludes us from reexamining it on the merits today.

Based upon the foregoing opinion, the order of the trial court is affirmed.[10]

McGINLEY, J., concurs in the result only.

SMITH and COLINS, JJ. dissent.

**10.** The parties also argue before us the question of whether there exists an adequate administrative remedy in an appeal to the Board. We do not believe that the Board is empowered or particularly qualified to decide whether Penn State is a Commonwealth agency. Thus, we reject this contention.

## ORDER

NOW, October 12, 1989, the order of the Court of Common Pleas of Centre County in the above-captioned matter is hereby affirmed.