608 A.2d 622

**BUCKS COUNTY COMMUNITY COLLEGE, Appellant,**

**v.**

**BUCKS COUNTY BOARD OF ASSESSMENT APPEALS, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 4, 1992.

Decided April 28, 1992.

506

Jeffrey P. Garton, for appellant.

Edward Rudolph, for appellee.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and KELLEY, JJ.

KELLEY, Judge.

 We are asked to decide whether a Community College established pursuant to the Community College Act of 1963 (CC Act)[1] is an "instrumentality of the Commonwealth" and thereby immune from local taxation.[2]

---

1. Act of August 24, 1963, P.L. 1132, *formerly*, 24 P.S. §§ 5201–5214, repealed and re-enacted by the Act of July 1, 1985, P.L. 103, currently found at 24 P.S. §§ 19–1901–A—19–1913–A.

2. We will employ the term "immune" rather than "exempt," noting that an exemption exists where the legislature acts affirmatively to remove, in a manner authorized by the constitution, property otherwise subject to taxation, while immunity exists because no specific power to tax this class of property has ever been delegated by the legislature to the particular taxing body. *See* Cyril A. Fox, Jr., The Uneasy Law of Real Estate Tax Exemptions in Pennsylvania, 39 U.PITT.L.Rev. 175, 212 (1977) [hereinafter, Fox]. We note that the immunity of the sovereign from local taxation stems from the lack of delegation of the taxing power and not from the common-law doctrine of sovereign immunity, which was abrogated by our Supreme

On June 28, 1990, Bucks County Community College (BCCC) acquired three parcels of real estate within the Borough of Bristol. The property was donated to BCCC by the Grundy Foundation for the purpose of constructing a satellite campus of BCCC. The deed, expressed as a fee simple subject to condition subsequent, provided that the premises must be used for educational purposes for a period of ten years from the date of conveyance, and further provided that development for such purposes must be initiated within three years of the date of the conveyance.[3]

BCCC applied to the Bucks County Board of Assessment Appeals (board) for immunity from real estate taxes levied by Bristol Borough, Bristol Borough School District and Bucks County, based on BCCC's alleged status as an instrumentality or agency of the Commonwealth. The board found no immunity and assessed the property at $25,860.

BCCC then filed a complaint in equity on September 20, 1990, seeking to restrain the board from assessing the property. The parties agreed to submit the case on stipulated facts without argument and, on May 24, 1991, the Honorable Kenneth G. Biehn denied the requested injunctive relief. In a well written opinion, Judge Biehn relied on the language of the CC Act itself to conclude that BCCC was not entitled to immunity as an instrumentality of the Commonwealth. This appeal from the trial court's denial of post-trial motions followed.

## IMMUNITY OF THE SOVEREIGN FROM TAXATION

■ More than a half century ago, our Supreme Court held that a political subdivision cannot tax real estate owned by the Commonwealth "unless it points to a statute clearly authorizing it to do so." *Pennsylvania State Employes' Retirement System v. Dauphin County*, 335 Pa. 177, 181, 6 A.2d 870, 872 (1939). When applicable, this immunity

Court in *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978).

**3.** Reproduced Record at 3a.

applies to all real estate owned by the Commonwealth or instrumentality thereof, whether or not it is used for a public purpose. *Owen J. Roberts School District Appeal,* 45 Pa.Commonwealth Ct. 135, 405 A.2d 1314 (1979), *rev'd on other grounds,* 500 Pa. 465, 457 A.2d 1264 (1983). In contrast, "all other public property," i.e., property belonging to local governments, is exempt from taxation only to the extent that the property is used for a public purpose. Section 204(a)(7) of the General County Assessment Law.[4]

We have held that the Southeastern Pennsylvania Transportation Authority was immune from local taxation as an instrumentality of the Commonwealth. *Southeastern Pennsylvania Transportation Authority v. Board of Assessment and Revision of Taxes,* 13 Pa.Commonwealth Ct. 207, 319 A.2d 10 (1974).[5] The Redevelopment Authority of the City of Harrisburg was similarly found to be immune. *Harrisburg School District Tax Appeal,* 53 Pa.Commonwealth Ct. 299, 417 A.2d 848 (1980).

To determine whether an entity constitutes an agency or instrumentality of the Commonwealth for both tort and tax immunity purposes, our appellate courts have analyzed the language of the entity's enabling legislation. *See, e.g., Marshall v. Port Authority of Allegheny County,* 524 Pa. 1, 568 A.2d 931 (1990); *Commonwealth v. Erie Metropolitan Transit Authority,* 444 Pa. 345, 281 A.2d 882 (1971); *Crosby v. Kotch,* 135 Pa.Commonwealth Ct. 470, 580 A.2d 1191 (1990); *Poliskiewicz v. East Stroudsburg University,* 113 Pa.Commonwealth Ct. 13, 536 A.2d 472 (1988); *Harrisburg School District Tax Appeal; Southeastern Pennsylvania Transportation Authority v. Board of Assessment and Revision of Taxes.* Before turning to the CC Act, however, we will address BCCC's argument that both state-owned and state-related universities have been held to be "instrumentalities of the Commonwealth," thereby compel-

4. Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020–204(a)(7).

5. For a discussion and criticism of this and other recent immunity cases, *see* Fox, *supra* note 2, at 216–22.

ling the conclusion that community colleges, which are defined as "public", must also be accorded like treatment.

## STATUS OF STATE–OWNED AND STATE– RELATED UNIVERSITIES

The fourteen state-owned universities, now encompassed in the State System of Higher Education (SSHE), have been held to be agencies of the Commonwealth, both prior to and since the establishment of SSHE in 1983. *Poliskiewicz; Finkelstein v. Shippensburg State College,* 29 Pa.Commonwealth Ct. 373, 370 A.2d 1259 (1977). The older cases appear to have recognized immunity based simply on the fact that these institutions were "owned and operated" by the Commonwealth; *Finkelstein.* Section 2016–A of the Public School Code of 1949 [6] specifically provided for continuation of, *inter alia,* "privileges." *Poliskiewicz,* 113 Pa.Commonwealth Ct. at 17, 536 A.2d at 474. Because these institutions had been immune under prior law, the "privilege" of that immunity continued. *Id.*

BCCC argues that we have recently accorded tax immunity to a state-related university, citing *County of Centre v. Pennsylvania State University,* 129 Pa.Commonwealth Ct. 184, 565 A.2d 187 (1989), *petition for allowance of appeal granted,* 525 Pa. 651, 581 A.2d 576 (1990). The holding in that case, however, was specifically grounded on the *res judicata* effect of a 1939 decision and, therefore, not authoritative on the question before us. *Id.,* 129 Pa.Commonwealth Ct. at 205, 565 A.2d at 197. Furthermore, we have recently held that Temple University, another of the state-related universities, is not a Commonwealth agency for purposes of tort immunity despite the fact that Section 2 of the Temple University—Commonwealth Act (Temple Act) [7] specifically uses the term "instrumentality of the Commonwealth." *Doughty v. City of Philadelphia,* 141 Pa.Com-

6. Act of March 10, 1949, P.L. 30, *as amended.* Section 2016–A was added by Section 2 of the Act of November 12, 1982, P.L. 660, *as amended,* 24 P.S. § 20–2016–A.

7. Act of November 30, 1965, P.L. 843, 24 P.S. § 2510–2.

monwealth Ct. 659, 596 A.2d 1187 (1991). The "instrumentality" language was found not to be controlling in light of the express statement in the Temple Act that "continued" prior existing privileges.[8] *Id.*, 141 Pa.Commonwealth Ct. at 660–662, 596 A.2d at 1188–89 (quoting *Mooney v. Board of Trustees of Temple University*, 448 Pa. 424, 292 A.2d 395 (1972)).[9]

The status of both state-owned and state-related universities has been determined by the express statutory language, in their respective enabling statutes, which "continued" the pre-existing status of these institutions; "owned and operated" by the Commonwealth in the case of the SSHE institutions, and a "non-profit corporation chartered for educational purposes" in the case of Temple. Such an analysis is of no assistance as to community colleges, which had no existence prior to the CC Act. We therefore reject BCCC's argument that the status of other "public" universities is persuasive in this case and will now turn to the CC Act.

## THE COMMUNITY COLLEGE ACT OF 1963

▪ This court has recently examined the CC Act in the context of governmental immunity. *Community College of Allegheny County v. Seibert*, 144 Pa.Commonwealth Ct. 616, 601 A.2d 1348 (1992). Relying in part on the Superior Court's analysis in *Northampton County Community College v. Dow Chemical*, 389 Pa.Superior Ct. 11, 566 A.2d 591 (1989), *aff'd per curiam*, 528 Pa. 502, 598 A.2d 1288 (1991), we concluded that a community college was not a "Commonwealth Party" for the purpose of sovereign immunity, but rather that a community college was more properly classified as a local agency and, therefore, entitled to governmental rather than sovereign immunity.

**8.** Section 3 of the Temple Act, 24 P.S. § 2510–3.

**9.** *Mooney* also discusses the history of Temple, finding that it was originally a "non-profit corporation chartered for education purposes," and that the legislature had intended to preserve that status. *Id.*, 448 Pa. at 430, 292 A.2d at 399.

The *Seibert* court reached its conclusion through analysis of relevant provisions of the CC Act. Section 1901-A of the CC Act defines a community college as:

[A] public college or technical institute which is established and operated in accordance with the provisions of this act by a local sponsor....

24 P.S. § 19-1901-A(4).

A local sponsor is defined as:

[A] school district or municipality or a county board of school directors or any combination of school districts, municipalities or county boards of school directors which participate or propose to participate in the establishment and operation of a community college.

24 P.S. § 19-1901-A(2).

The *Seibert* court also noted that:

In addition to being sponsored solely by political subdivisions, community colleges under the CC Act are expressly granted the right to participate in various other statutory schemes which are normally reserved for political subdivisions. For example, Section 1913-A(g) of the CC Act, 24 P.S. § 19-1913-A(g), provides that the community colleges shall be eligible for participation in the State Public School Building Authority Act and the Municipal Authorities Act of 1945. [Footnotes omitted.]

*Seibert*, 144 Pa.Commonwealth Ct. at 623, 601 A.2d at 1351-52.

Our review of the CC Act, both here and in *Seibert*, leads us to conclude that a community college is not an instrumentality of the Commonwealth, but rather is "the creature and representative of the sponsor which created it." *Wills v. Toole*, 61 D. & C.2d 473, 475 (C.P. Luzerne 1972). As such, it is more properly classified as a local agency and, while it may be entitled to an exemption where its property is actually used for a public purpose, it cannot claim the "blanket" immunity of the Commonwealth itself or an instrumentality thereof.

Accordingly, we will affirm the order of the trial court.

## ORDER

NOW, this 28th day of April, 1992, the order of the Court of Common Pleas of Bucks County, No. 90–8754–13–5, dated June 5, 1991 is affirmed.