## Appeal of Dauphin County General Authority v. Dauphin County Board of Assessment Appeals

C.P. of Dauphin County, nos. 5688 S 1998 and 5689 S 1998.

*Neil E. Hendershot,* for Dauphin County General Authority.
*Carl G. Wass,* for Dauphin County Board of Assessment Appeals.
*Judith B. Schimmel,* for City of Harrisburg.

LEWIS, *J.,* December 15, 1999—Presently before this court are two appeals by the Dauphin County General Authority from an adjudication of the Dauphin County Board of Assessment Appeals which found that the premises located at 555 Walnut Street, Harrisburg (Forum Place) and the premises located at 1101 South Front Street, Harrisburg (Riverfront Office Center) were not immune or exempt from the payment of real estate taxes.

The facts of these consolidated cases are, essentially, not disputed. The authority was created by ordinance adopted by the board of commissioners of Dauphin County as a municipal authority under the Pennsylvania Municipal Authorities Act, 1945, May 2, P.L. 382, as amended, 53 P.S. §301 et seq. The authority was incorporated on March 7, 1984 for an initial term of 50 years.

On January 8, 1998, the term of the authority's existence was extended to January 8, 2048.

Forum Place consists of 2.26 acres of land with a nine-story office building constructed thereon. The building contains approximately 377,804 square feet of net leasable area with a parking garage for approximately 1,482 vehicles. In addition, the property maintains related access ways and appurtenant facilities. Prior to its purchase by the authority on July 13, 1998 for $65,799,000 in tax-exempt revenue bonds, Forum Place was constructed by Musalair Trust, under the direction of its trustee, John O. Vartan. At the time, the developer had negotiated long-term leases for office space with the Commonwealth of Pennsylvania.

Riverfront Office Center consists of 19.11 acres of land on which is constructed a five-floor office building with a total of approximately 438,000 square feet of area, divided into roughly 365,400 square feet for office space and 75,000 square feet for a lower level parking garage with space for nearly 200 vehicles. There are also additional surface parking lots of approximately 485,432 square feet. In addition, the premises accommodates roadside parking areas, related roads and appurtenant facilities. Prior to its purchase by the authority on June 30, 1998 for $41,040,000 in tax-exempt revenue bonds, Riverfront Office was constructed by Alex Grass and Oliver Rosenberg, a partnership, succeeded by C.R. Center L.P. d/b/a Commonwealth River Front Office Center L.P., a Pennsylvania limited partnership. Similar to the Forum Place property, the private developer of Riverfront Office Center had negotiated long-term leases for its office space with the Commonwealth of Pennsylvania.

All of the properties' leases were assigned by the respective sellers to the authority. The properties are presently leased to the following governmental bodies:[1]

## Forum Place

—Pennsylvania Office of the Attorney General
—Legislative Reference Bureau
—Pennsylvania Department of Aging
—United States Social Security Administration
—Office of the Chief Clerk, Senate
—Office of the Chief Clerk, House
—Pennsylvania Department of Transportation

The garage in Forum Place contains approximately 1,482 spaces. The leases require 1,310 parking spaces for the tenants. The remaining spaces are either leased on a monthly basis to the Commonwealth, businesses, or individuals, or are available for daily parking including those who may visit the Commonwealth's offices.

## Riverfront Office Center

—Pennsylvania Department of Transportation
—Pennsylvania Human Relations Commission
—United States Department of the Treasury
—Pennsylvania Board of Probation and Parole
—Pennsylvania Board of Finance and Revenue

---

1. The only nongovernmental tenant of either property is an automatic teller machine located at the Forum Place and leased to Dauphin National Bank. Its occupancy accounts for approximately 500 square feet of net leasable area, constituting approximately one-tenth of 1 percent of the square footage of the Forum Place.

Riverfront Office Center's garage, the three surface parking lots and roadside parking total approximately 1,230 spaces. The leases require approximately 902 parking spaces for the building's tenants. The remaining spaces either are leased on a monthly basis to the Commonwealth or businesses, or are made available to individual patrons of the lessees.

Both Forum Place and Riverfront Office Center were facilities wholly developed and constructed by private entrepreneurs and then leased to governmental entities. These private enterprises were assessed for real estate taxes, and in fact, paid real estate taxes for several years to Dauphin County and to the school district (Harrisburg School District) and municipality (City of Harrisburg) in which the properties were located. The authority then purchased both parcels at private sales and received an assignment of all of the leases. Basically, through the sale of the parcels, the lessees simply acquired a new landlord. There were no significant improvements to the properties after acquisition by the authority nor were the properties used or intended to be used for any other purpose than to house government offices.

The authority was able to finance its purchases through the use of tax-free bonds which required the authority to pay a rate of interest at 6 percent or less, whereas, at least at the time of appraisals of the properties, the mortgage interest rate available to a private investor was in the range of 7 1/2 percent to 7 3/4 percent. (N.T. 54.) Carl A. Fehrenbach, a Pennsylvania certified general appraiser, performed an appraisal for the authority prior to its purchase of the Riverfront Office Center. This court finds his evaluation notable. In rendering his professional opin-

ion, Mr. Fehrenbach stated that the market value of the subject property was $39,000,000. He also opined that because of "the low and favorable interest rate available from the tax-free bond market," coupled with the lack of obligation to pay real estate taxes, the same property, under the ownership of the authority, had an investment value of $44,000,000. (N.T. at 60-61.) Investment value, as Mr. Fehrenbach defined, is "the specific value of an investment to a particular investor or class of investors based on individual investment requirements; as distinguished from market value that is impersonal and detached." (N.T. 58-59.)

## DISCUSSION

In the instant case, the board maintains that the authority acted outside of its authorized governmental purpose and in competition with private enterprise by acquiring the properties, thereby creating competitive enterprises that are neither immune nor exempt from property tax. The authority counters that it not only acted within its authorized scope, it is not competing with private enterprise and is therefore immune from taxation. In the alternative, the authority argues that the properties are exempt from the payment of property taxes since they are public properties used for a public purpose.

The Municipality Authorities Act of 1945 sets forth the general purposes and powers for which any authority may be incorporated. 53 P.S. §306A.(a). However, within that same section, limitations are set forth. Specifically, the following is provided:

"(b) This section is subject to the following limitations: . . .

"(2) *The purpose and intent of this Act being to benefit the people of the Commonwealth* by, among other

things, increasing their commerce, health, safety and prosperity, and *not to unnecessarily burden or interfere with existing business by the establishment of competitive enterprises,* none of the powers granted by this Act shall be exercised in the construction, financing, improvement, maintenance, extension or operation of any project or projects or providing financing for insurance reserves *which in whole or in part shall duplicate or compete with existing enterprises serving substantially the same purposes . . . ."* 53 P.S. §306A.(b)(2). (emphasis added)

In order to decide the issue of the taxation of a municipal authority, this court will first distinguish between the terms "immunity" and "exemption," words that often get confused and are frequently interchanged. In *Bucks County Community College v. Bucks County Board of Assessment Appeals,* 147 Pa. Commw. 505, 608 A.2d 622 (1992), the court found:

"[A]n exemption exists where the legislature acts affirmatively to remove, in a manner authorized by the constitution, property otherwise subject to taxation, while immunity exists because no specific power to tax this class of property has ever been delegated by the legislature to the particular taxing body." *BCCC v. Board of Assessment Appeals,* 147 Pa. Commw. at 506 n.2, 608 A.2d at 623 n.2.

The Pennsylvania Supreme Court in *Delaware County Solid Waste Authority v. Berks County Board of Assessment Appeals,* 534 Pa. 81, 626 A.2d 528 (1993), addressed the issue of tax immunity of a municipal authority. In that case, the Boyerstown School District was attempting to impose a real estate tax on property owned by the Delaware County Solid Waste Authority. The Supreme Court held that an authority created pursuant to the Municipal Authorities Act is an independent

agency of the Commonwealth and therefore is immune from taxation. "It is well settled that property owned by the Commonwealth and its agencies is beyond the taxing power of a political subdivision." *Delaware County Solid Waste Authority*, 534 Pa. at 85, 626 A.2d at 531. It is only when an agency acts outside its authorized governmental purpose is its immunity not automatic. *Id.* at 87, 626 A.2d at 531.

The manner in which the properties were acquired in the case sub judice bears review. The private owners previously paying real estate taxes on these properties negotiated with the authority in unadvertised private sales not open to public bidding or participation. The day after the properties were sold, the parcels disappeared from the tax rolls simply because of the identity of the new owner, the Dauphin County General Authority. Under the peculiar circumstances of this case, this court finds that such private sales, while not prohibited by the Act, stifle competition from the private sector. Additionally, the private sales deprived the local governmental entities of any opportunity to encourage private enterprise to acquire the buildings through possible tax incentives rather than suffer the permanent loss of the properties from the tax rolls. This court finds that the actions of the authority are patently unfair to the local taxing bodies. County and municipal tax bases will continue to erode at the whim of the authority should the authority be permitted to purchase taxpaying properties housing offices of state government at private sales and operate them in the same manner as before the acquisitions with presumed tax-free standing as an instrumentality of the Commonwealth. Such depletion of the tax base remains a serious problem in Dauphin County, and in Harrisburg in particular, where the number of state government-owned

properties is significantly disproportionate to privately owned real estate.

This court finds that such competitive behavior is not permitted based on section 306A.(b)(2) of the Municipality Authorities Act. As emphasized earlier, the intention of the law empowering the authority limits this type of practice. The purpose of the Act is "not to unnecessarily burden or interfere with existing businesses by the establishment of competitive enterprises . . . which in whole or in part shall duplicate or compete with existing enterprises serving substantially the same purposes . . . ." This court recognizes the extraordinary edge the authority maintains over private enterprise in the Harrisburg area and it is this type of project engaged in by the authority that the Act seeks to limit. The recognition of that very limitation is acknowledged in paragraph 5 of the articles of incorporation of the authority, which states:

"(5) The authority is incorporated for the following purposes: The acquiring, holding, constructing, improving, maintaining and operating, owning, and leasing, either in the capacity of lessor or lessee, projects of the kind and character contemplated by law for a general purpose authority, as authorized and permitted by, and also as limited by the provisions of the Pennsylvania Municipality Authorities Act, the Act of May 2, 1945, P.L. 382, as amended, or as hereafter amended and supplemented."

Testimony at the hearing before this court revealed that approximately 2.5 million square feet of office space throughout Dauphin County is leased to agencies of the Commonwealth. (N.T. 15-16.) Prior to the purchase by the authority of the two subject properties, approximately 95 percent of that leased office space was in the hands of "existing enterprises" which were part of the private sec-

tor and whose properties were subject to taxation by all real estate tax levying bodies in Dauphin County. (N.T. 22-23.) Only 5 percent of that leased space was declared immune or exempt from taxation as either being leased to the federal government or to Penn State University. (N.T. 29, 33, 36.)

After the authority purchased Forum Place and Riverfront Office Center, 617,628 square feet of Commonwealth-leased office space (or 25 percent of the total Commonwealth-leased space) was shifted from the hands of private taxpaying investors to the ownership of the authority, thereby dramatically reducing the total leased space owned by the private sector in Dauphin County. As previously noted, the major impact of such reduction falls heaviest on the City of Harrisburg and the Harrisburg School District, two entities whose tax base is already decimated by the plethora of state-owned properties within the city limits that are immune or exempt from property tax.

It is this type of "competition with existing enterprise" that the authority is engaging in which is strictly limited under the Act. Private enterprise must not only compete with the authority for the purpose of attracting agencies of the Commonwealth as tenants, but must also suffer the disadvantages discussed above. This court finds that because the authority's leasing arrangement at the two properties unnecessarily interferes with existing private businesses through the establishment of such a competitive enterprise, and because the activity is in direct conflict with and outside the scope of the Municipal Authorities Act, the authority's efforts to be granted immunity for its activities at Forum Place and the Riverfront Office Center must fail.

The authority contends that the board's competition argument is improper because the board cannot show actual competition for the purchase and lease of the property, and further, that the acquisition and leasing of the properties are not activities that are subject to the anti-competition proviso of the Municipal Authorities Act. Under the facts of the instant case, requiring the board to show actual competition sets the bar too high. It would be nearly impossible for the board to present competition evidence in light of the private sales. Had the properties been advertised for sale and no interested buyers surfaced, the board's position would have been severely weakened. What the board has effectively shown, however, is the virtual impossibility of any competition given the authority's private purchases and its distinct advantages in financing and property tax immunity or exemption. Further, the board has clearly established active private sector involvement in the leasing of office space to state government in Harrisburg and Dauphin County.

The authority cites the case of *Thompson Appeal,* 427 Pa. 1, 233 A.2d 237 (1967) to support its contention that "acquisition" and "leasing" are not activities contemplated by the anti-competition proviso in the Act which states that there can be no competition in the "construction, financing, improvement, maintenance, extension or operation" of projects. 53 P.S. §306A.(b)(2). The court in *Thompson Appeal* indicated that the omission of the words "power to acquire and hold property" showed a legislative design that the proviso was not to be a restriction on an authority's right to condemn. *Thompson Appeal,* 427 Pa. at 3, 233 A.2d at 239. However, this court finds a clear distinction between the facts in that case and those at issue in this matter.

In *Thompson Appeal,* a township airport authority sought to exercise its power of eminent domain to condemn land belonging to a private airport in order to construct a municipal airport facility. The main issue before the court was whether there was substantial evidence to justify the taking. The court held that the anti-competition proviso of the Act did not prohibit condemnation. Further, the court noted that the primary purpose of the proviso was to protect businesses that will be competing with the condemnor's (authority's) operation. Interestingly, the court commented that the authority's proposed facility was a substantial improvement over the existing private airport. Unlike the instant case, *Thompson Appeal* did not involve an issue of tax immunity or exemption, the public benefit of the taking was apparent and competition with private enterprise was minimal, at best.

This court finds that the activities characterized by the words "acquisition" and "leasing" are intrinsic to the definitions of the words "construction," "maintenance" and "operation" as included in the anti-competition proviso of the Act. To begin, under the Act, "project" is defined as follows:

"(j) The term *'project'* shall mean . . . any structure, facility or undertaking which an authority is authorized to *acquire,* construct, finance, improve, maintain or operate, or provide financing for insurance reserves under the provisions of this Act, or any working capital which an authority is authorized to finance under the provisions of this Act." 53 P.S. §302(j). (emphasis added)

In addition, the definition for "construction" under the Act includes the term "acquisition." 53 P.S. §302(e). Webster's Ninth New Collegiate Dictionary includes

business transactions in its definition of operation, and the definition of maintenance, meaning the act of maintaining, includes the upkeep of property or equipment. The authority purchased the properties, is responsible for the upkeep and maintenance of the properties as owner and leases the properties to various tenants. The authority is, in essence, operating a business. It would be illogical to accept the authority's argument that such transactions are not contemplated in the plain meaning of the anti-competition proviso of the Act. Therefore, the authority's position is without merit.

Additionally, this court must examine the issue of public benefit. Implicit in any action of the authority is that they act "to benefit the people of the Commonwealth." Testimony at the hearing revealed that the authority's mission "is to benefit a governing municipal, state, local, county, help them fulfill their purposes." (N.T. 104.) Further testimony indicated that the authority only spends its revenues for the health, welfare and recreation of the people of Dauphin County. (N.T. 120.)

However, this court has difficulty in discerning a public benefit for the authority's actions in this case, either for the people of the Commonwealth or Dauphin County citizens. Forum Place and the Riverfront Office Center were constructed by private enterprise and occupied (leased) exclusively by Commonwealth agencies and departments. What public good was achieved by purchasing these sites at a private sale, thus removing them from the tax base, while continuing to lease the properties to the same state agencies? The best interests of the people of Harrisburg, Dauphin County or this Commonwealth are not served when a municipal authority removes property from the tax rolls for no apparent benefit or improve-

ment, thereby eliminating a source of revenue for local government, and operates a business "serving substantially the same purposes" as the previous private enterprises.

Additionally, this court recognizes the municipal services agreement made between the authority and Dauphin County that provides for the annual payment in lieu of taxes by the authority to the county. Such payments are to be made after other payments, including but not limited to, all operating expenses pertaining to each property, debt service upon the bonds and a replenishment of any amounts withdrawn from the debt service reserve fund. In effect, if the authority, in any given year, does not have enough money left over after satisfying all of its other obligations, the payment in lieu of taxes will not be made. This court finds that the subordinate nature of such an agreement does not satisfy the authority's duty to pay taxes based on this court's determination that the authority is not immune from taxes due to the limitations placed on it by the Act.

In the alternative, because this court finds that the authority is not immune from the payment of real estate taxes on these properties, the authority argues that it qualifies for tax exemption status as set forth in section 204 of the General County Assessment Law, 72 P.S. §5020-204. The law concerning exemption in this matter provides:

"(a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

"(7) *All other public property used for public purposes,* with the ground thereto annexed and necessary for the occupancy and enjoyment of the same . . .

"(b) Except as otherwise provided in clauses (11) and (13) of this section, all property, real or personal, other than that which is actually and regularly used and occupied for the purposes specified in this section, and *all such property from which any income or revenue is derived,* other than from recipients of the bounty of the institution or charity, shall be subject to taxation, except where exempted by law for state purposes and nothing herein contained shall exempt same therefrom.

"(c) Except as otherwise provided in clause (10) of this section, all property, real and personal, actually and regularly *used and occupied for the purposes specified in this section shall be subject to taxation,* unless the person or persons, associations or corporation, so using and occupying the same, shall be seized of the legal or equitable title in the realty and possessor of the personal property absolutely." 72 P.S. §5020-204(a)(7), (b) & (c). (emphasis added)

The board initially maintains that the receipt of market-based rental income by the authority from its Commonwealth tenants renders the parcels subject to taxation under section 204(b) of the General County Assessment Law. The board contends that although the activities of the Commonwealth tenants constitute use of the properties for a public purpose, the exception applies since the authority is the owner of both parcels and is deriving income through its leases to the Commonwealth.

The board cites *Appeal of Archdiocese of Philadelphia,* 151 Pa. Commw. 480, 617 A.2d 821 (1992), to further its position. In that case, a former convent of the archdiocese of Philadelphia was denied tax exemption status by the Borough of Darby when it contracted a five-year lease agreement with the Delaware County Pro-Life

Coalition for a rental of $12,000 per year. The Commonwealth Court agreed with the Borough of Darby and precluded exemption under section 204(b), reasoning that the section denies exemption to property which brings in any income or revenue other than from recipients of the bounty of the institution or charity. *Appeal of Archdiocese,* 150 Pa. Commw. at 485, 617 A.2d at 824. Similarly, in *Berks County Board of Assessment and Revision of Taxes v. Berks County Conservancy,* 102 Pa. Commw. 64, 517 A.2d 572 (1986), the Commonwealth Court held that for an exception to occur under section 204(c), the owner charity must both use and occupy the premises to qualify for tax exemption. The board also cites *Young Men's Christian Association v. Reading,* 402 Pa. 592, 167 A.2d 469 (1961) and *Greater Erie Economic Development Corporation Appeal,* 61 Pa. Commw. 144, 433 A.2d 568 (1981) in support of its denial of exemption status to the authority.

However, there is a critical difference between the cases cited by the board and the case sub judice. In the cases where section 204(b) and (c) apply and exemption is denied, charities are the owners of the leased property. The issue in those cases was not public use but charitable use. Our legislature is specific that all *public property used for public purposes* is entitled to tax exemption. Further, the leasing of property and the receipt of rent will not defeat an exemption from local real estate taxes where public property is used for public purposes. *Wesleyville Borough v. Erie County Board of Assessment Appeals,* 676 A.2d 298 (Pa. Commw. 1996). The court in *Wesleyville* held that where the primary and principal use to which property is put is public, the mere fact that

income is incidentally derived from the use of the property does not affect its character as property devoted to a public use. *Id.* at 302, citing *Moon Township Appeal,* 425 Pa. 578, 229 A.2d 890 (1967). Therefore, the court found that the leasing of properties and the receipt of rent by municipalities does not defeat exemption from local real estate taxes. *Id.* at 304.

At first blush, it would appear that Forum Place and Riverfront Office Center are exempt from real estate taxation under 72 P.S. §5020-204(a)(7) and the holding in *Wesleyville.* The authority leases the properties in question and the government entities that lease them use the facilities for public purposes consistent with *Wesleyville.* In *Wesleyville,* the court commented that the key issue in the dispute was whether the properties were being used for a public purpose. One of the properties was purchased by the Borough of Wesleyville and leased to Erie County for use as a district justice's office. The second property was part of the McKean Borough Hall and leased to the county for a district justice's office. The court noted that the properties at issue were clearly public properties. *Wesleyville,* 676 A.2d at 303.

However, in the cases now before this court, a distinction exists. So long as properties are acquired, maintained and operated by the authority in conformance with the Act, they are indeed public property, and, as such, exempt from property tax. On the other hand, if the authority acts outside its scope of authority, in an "ultra vires" fashion, the properties can no longer be considered "public property," and exemption under the General County Assessment Law must fail.

This court finds that since the authority functioned in a way adverse to the purpose and intent of the Act so as

to compete with existing enterprise, and further acted contrary to the benefit of the people of the Commonwealth, the properties in question cannot be deemed "public property." Therefore, the authority is not afforded tax exemption on these properties by virtue of having exceeded its authorized powers.

Accordingly, the following is entered:

## ORDER

And now, December 15, 1999, it is hereby ordered that the appeal of the Dauphin County General Authority is denied. The parcel located at 555 Walnut Street, Harrisburg (Forum Place) is neither immune nor exempt from the payment of real estate taxes.

## ORDER

And now, December 15, 1999, it is hereby ordered that the appeal of the Dauphin County General Authority is denied. The parcel located at 1101 South Front Street, Harrisburg (Riverfront Office Center) is neither immune nor exempt from the payment of real estate taxes.