596 A.2d 1187

George DOUGHTY and Bernadine A. Doughty, as Parents
and Natural Guardians of Bernadine Doughty et al.

v.

CITY OF PHILADELPHIA and City of
Philadelphia School District et al.,

Romano's Bus Service, Inc., Appellant.

George DOUGHTY and Bernadine A. Doughty, as Parents and
Natural Guardians of Bernadine Doughty and George Doughty
and Bernadine A. Doughty, In Their Own Right, Appellants

v.

CITY OF PHILADELPHIA and City of Philadelphia School
District and Temple University, a Commonwealth University/Woodhaven Center and Romano's Bus Service, Inc., Appellees.

Commonwealth Court of Pennsylvania.

Argued June 12, 1991.

Decided Aug. 13, 1991.

John J. Stanzione, for appellants Doughty et al.

Alan S. Gold, for appellees City of Philadelphia et al.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

PALLADINO, Judge.

George and Bernadine A. Doughty (Doughtys) and Romano's Bus Service Inc. (Romano's) have filed cross appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) granting summary judgment in favor of Temple University/Woodhaven Center (Temple) on grounds that Temple is immune from suit under 42 Pa.C.S. § 8521 (sovereign immunity).

The underlying tort action was brought to recover damages arising from injuries suffered by the minor, Bernadine Doughty (Bernadine), on January 31, 1985. On that date, Bernadine, who is profoundly retarded, was transported from her home to Temple by a bus operated by Romano's, spent most of the day in school at Temple, and was transported from Temple to her home by Romano's at the end of the school day. During the period that Bernadine was away from her home, she suffered a fracture to her upper right arm. Because of Bernadine's retardation she cannot describe when or how the fracture occurred.

After the pleadings were closed, Temple filed a motion for summary judgment, alleging that it was an independent agency of the Commonwealth of Pennsylvania, and entitled to sovereign immunity. The trial court concluded that because the general assembly in the Temple University—Commonwealth Act, Act of November 30, 1965, P.L. 843, 24 P.S. §§ 2510-1—2510-12 (Temple Act), used the word "instrumentality" to describe Temple, the general assembly intended Temple to be a commonwealth agency. Accordingly, the trial court granted the motion, holding that the Temple Act had changed the status of Temple to a common-

wealth agency thereby entitling Temple to sovereign immunity.

The issue[1] on appeal[2] is whether Temple is entitled to sovereign immunity as defined by 42 Pa.C.S. § 8501 and 42 Pa.C.S. §§ 8521–8522. Initially, we note that the defense of sovereign immunity is available to a "commonwealth party," which is defined as a "[c]ommonwealth agency and any employee thereof...." 42 Pa.C.S. § 8501. "Commonwealth agency" is defined as "[a]ny executive agency or independent agency." 42 Pa.C.S. § 102. Temple asserts that it is an "independent agency" which is defined as:

Boards, commissions, authorities and other agencies and officers of the Commonwealth government which are not subject to the policy supervision and control of the Governor, but the term does not include any court or other officer or agency of the unified judicial system or the General Assembly and its officers and agencies. 42 Pa. C.S. § 102.

Doughtys contend that in *Mooney v. Board of Trustees of Temple University*, 448 Pa. 424, 292 A.2d 395 (1972), the supreme court decided that the Temple Act did not transform Temple into a state agency. Doughtys argue that because Temple is not a state agency under *Mooney*, Temple is not a commonwealth agency protected by sovereign immunity.

In *Mooney*, several students and faculty members sought to compel Temple to make certain information available for

1. The Doughtys argue that the defense of sovereign immunity has been waived by Temple because it failed to raise the defense in its answer and new matter. However, the defense of sovereign immunity cannot be waived. *Department of Environmental Resources v. Myers*, 135 Pa.Commonwealth Ct. 526, 581 A.2d 696 (1990).

2. When reviewing an order granting summary judgment, our scope of review is limited to a determination of whether the trial court committed an error of law or an abuse of discretion. *Johnson v. Woodland Hills School District*, 135 Pa.Commonwealth Ct. 43, 582 A.2d 395 (1990). Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. No. 1035(b).

inspection based on a theory that Temple was a state agency under the Act of June 21, 1957 (Right to Know Act), P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.4.

The supreme court looked first to the Right to Know Act definition of "state agency," which is as follows:

> Any department, board or commission of the executive branch of the Commonwealth, any political subdivision of the Commonwealth, the Pennsylvania Turnpike Commission, or any State or municipal authority or similar organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function.   65 P.S. § 66.1(1).

The supreme court identified three sections of the Temple Act relevant to the claim that Temple had become a state agency:  (1) the name of Temple University was changed to "Temple University—of the Commonwealth System of Higher Education";[3]  (2) the stated purpose of the Temple Act was "to extend Commonwealth opportunities for higher education by establishing Temple University as an instrumentality of the Commonwealth to serve as a State-related institution in the Commonwealth system of higher education";[4]  and (3) the express statement that Temple "shall continue as a corporation for the same purposes as, and with all rights and privileges heretofore granted to Temple University."[5]

The supreme court also noted that the Temple Act provides for the appointment of twelve commonwealth representatives to Temple's board of trustees, but that the commonwealth trustees are a one-third minority of the board. The supreme court observed that the majority of non-public trustees maintain management and control over Temple.[6]

**3.** Temple Act, 24 P.S. § 2510–3.

**4.** 24 P.S. § 2510–2(7).

**5.** 24 P.S. § 2510–3.

**6.** These powers include (1) the control and management of land, buildings and facilities owned by Temple which are used with commonwealth land and buildings for higher education, 24 P.S. § 2510–

The supreme court stated that the Temple Act permits the commonwealth, with the agreement of the board, to acquire land, erect and equip buildings, and provide facilities for the use of Temple.[7] The supreme court concluded that the commonwealth would not be required to secure such agreement from a state agency.

The supreme court specifically rejected the argument that by authorizing the General Assembly to appropriate money for Temple, the Temple Act transformed Temple into a state agency. Similarly rejected was the argument that Temple was transformed into a state agency because the Temple Act authorized Temple to participate in capital development and improvement programs. The supreme court concluded that this provision of funding was not inconsistent with the intent to preserve Temple's prior status. The supreme court further concluded that this intent was not altered by requiring Temple to file annual reports of its expenditures with the commonwealth to insure proper use of public funds. After examining all these provisions of the Temple Act, the supreme court concluded that the intent of the Temple Act was not to transform Temple into a state agency for the purpose of the Right to Know Act.

Temple asserts that *Mooney* is inapplicable for three reasons: (1) because *Mooney* limited its analysis to the definition of state agency in the Right to Know Act; (2) because *Mooney* was decided 6 years before the sovereign immunity statute was enacted; and (3) because *Mooney* does not consider the effect of the Temple Act's designation of Temple as an "instrumentality" of the commonwealth.

As to this first contention, Temple argues that *Mooney* was decided based on the definition of "state agency" in the Right to Know Act, under which a "state agency" must perform "an essential governmental function." Temple as-

2(6); (2) "management, control and conduct of the instructional, administrative, and financial affairs of the university," 24 P.S. § 2510–5; and (3) general power to exercise all Temple's powers and franchise and to make by-laws for the board and Temple's own government, 24 P.S. § 24 P.S. § 2510–5.

7. 24 P.S. § 2510–7.

serts that the definition of "commonwealth agency" applicable to sovereign immunity contains no such restriction.

The supreme court in *Mooney* did not limit itself to deciding whether Temple performed "an essential governmental function." Rather, the supreme court exhaustively examined the Temple Act, section-by-section, searching for any intent to transform Temple into a state agency and found none.

As to the second contention, Temple states that because *Mooney* was decided before the 1978 sovereign immunity statute was enacted, the holding in *Mooney* that Temple is not a state agency is inapplicable. Temple cites no authority for this position.

The sovereign immunity statute provides the defense of immunity to entities which have the status of commonwealth agency independent of the sovereign immunity statute. The only possible source for Temple's status as a commonwealth agency would be the Temple Act. In *Mooney*, the supreme court held that the General Assembly did not intend the Temple Act to alter Temple's prior status as a non-profit corporation. The subsequent passage of the 1978 sovereign immunity statute did not alter this holding in *Mooney*.

As to the third contention, Temple asserts that the designation of Temple as an "instrumentality of the commonwealth" in the Temple Act transformed Temple into a state agency.[8] Temple states that "instrumentality" is commonly

8. Temple cites as support *Braden v. University of Pittsburgh*, 477 F.2d 1 (3d Cir.1973). In *Braden*, the United States Court of Appeals, Third Circuit (circuit court) reviewed a district court decision granting the university's motion to dismiss a discrimination action by a faculty member under 42 U.S.C. §§ 1981 and 1983. In relevant part, the district court held that the university does not have sufficient contacts with the commonwealth for the faculty member to maintain a § 1983 action.

The circuit court considered the effect of the University of Pittsburgh–Commonwealth Act, Act of July 28, 1966, Special Sess., P.L. 87, 24 P.S. §§ 2510–201–2510–211, which like the Temple Act refers to the university as an "instrumentality" of the commonwealth. The circuit court noted that the term "instrumentality" suggests "agency." How-

defined as meaning "agency." Temple contends that if "instrumentality" does not mean "agency," inclusion of the term in the Temple Act would serve no purpose.

"Instrumentality" is defined as "1: the quality or state of being instrumental: a condition as serving as an intermediary ... 2a: something by which an end is achieved: MEANS ... b: something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out." Webster's Third International Dictionary 1172 (1986). The definition of "instrumentality" merely denotes that Temple is a means to achieving a purpose. The use of an entity by the commonwealth to achieve a purpose does not in itself transform the entity into a commonwealth agency.

Temple contends that the Pennsylvania Turnpike Commission and the Southeastern Pennsylvania Transportation Authority (SEPTA) are "instrumentalities of the commonwealth."[9] Temple asserts that because both these entities are protected by sovereign immunity, Temple is protected by sovereign immunity.

With regard to the Turnpike Commission, Temple argues that we are constrained by *Pennsylvania Turnpike Commission v. Jellig,* 128 Pa.Commonwealth Ct. 171, 563 A.2d 202 (1989). In *Jellig,* we concluded that the Turnpike Commission was protected by sovereign immunity because

ever, the circuit court declined to decide whether the university had sufficient contacts with the commonwealth because the record needed to be more fully developed.

Temple's use of *Braden* as an analogy misses its mark. A "person" acting under color of law for the purposes of § 1983 is not necessarily otherwise entitled to immunity under 42 Pa.C.S. §§ 8521 or 8541. We note further that *Braden* did not ultimately conclude that the term "instrumentality" had the effect of transforming the university into a state agency.

9. The Turnpike Commission is designated an "instrumentality of the commonwealth" in Section 4 of the Act of May 21, 1937, P.L. 774, *as amended,* 36 P.S. § 652d. SEPTA operates under Section 303(a) of the Pennsylvania Urban Mass Transportation Law, Act of January 22, 1968, P.L. 42, added by section 3 of the Act of July 10, 1980, P.L. 427, *as amended,* 55 P.S. § 600.303(a) (Mass Transit Law), which describes transportation authorities as instrumentalities of the commonwealth.

a "commission" is expressly listed in the Judicial Code's definition of "independent agency," and is thus a "commonwealth agency." Our holding was wholly independent of the general assembly's use of the term "instrumentality."

Temple also relies on *Feingold v. Southeastern Pennsylvania Transportation Authority*, 512 Pa. 567, 517 A.2d 1270 (1986), in which the supreme court held that "SEPTA is a commonwealth agency." The supreme court quoted the language of the Mass Transit Law, which describes all transportation authorities under the Mass Transit Law as follows:

> An authority shall in no way be deemed to be an instrumentality of any city or county or other municipality or engaged in the performance of a municipal function, but shall exercise the public powers of the Commonwealth as an agency and instrumentality thereof. 55 P.S. § 606.-303(a).

The supreme court also cited as instructive *Crilly v. SEPTA*, 529 F.2d 1355 (3d Cir.1976), in which the circuit court concluded that SEPTA was a commonwealth agency based on its designation as an "agency and instrumentality" of the commonwealth to "exercise ... public powers," including eminent domain.

In the present case, the Temple Act does not designate Temple as an "agency" and does not give Temple "public powers." Furthermore, as an "authority" SEPTA is expressly included in the definition of "independent agency" and is thus a "commonwealth agency."

Contrary to Temple's argument, the term "instrumentality" has not been construed as conveying commonwealth agency status. Accordingly, we conclude that the mere description of Temple as an "instrumentality" of the commonwealth does not entitle Temple to use the defense of sovereign immunity.

We conclude that *Mooney* controls this case, and holds with ample clarity that passage of the Temple Act did not transform Temple into a commonwealth agency. We hold

that Temple is not entitled to the defense of sovereign immunity. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

## ORDER

AND NOW, August 13, 1991, the order of the Court of Common Pleas of Philadelphia County is reversed, and these cases are remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.