803 A.2d 869 (2002)
COMMITTEE TO KEEP OUR PUBLIC SCHOOLS PUBLIC, and Roz Spiegel as its Coordinator, Philadelphia Federation of Teachers, AFT, Local 3, AFL-CIO and Ted Kirsch, as its Trustee Ad Litem, National Conference of Firemen and Oilers School Employees Union, Local 1201, SEIU, AFL-CIO, School Police Association of Philadelphia, and Michael Lodise, as its Trustee Ad Litem, School Cafeteria Employees, Local 634, Here, AFL-CIO and Sam Cook as its Trustee Ad Litem, Barbara Rugletic, Rochelle McQueen, Sara Ortiz, and Barbara Shankin, Petitioners,
v.
The Honorable Mark SCHWEIKER, Governor of the Commonwealth of Pennsylvania and his appointees, agents, representatives and/or designees, Charles B. Zogby, Secretary of Education, Pennsylvania Department of Education, School District of Philadelphia, Edison Schools, Inc., and its appointees, agents, representatives and/or designees, and Chris Whittle, as President and Chief Executive Officer, and his appointees, agents, representatives and/or designees, Respondents.
Commonwealth Court of Pennsylvania.
Argued June 12, 2002.
Decided July 29, 2002.
*870 Ralph J. Teti, Philadelphia, for petitioners.
Michael A. Bloom, Philadelphia, for respondent, Edison Schools.
Edward F. Mannino, Philadelphia, for respondent, C. Zogby.
Mary Ann Mullaney, Philadelphia, for intervenor, The School Reform Commission.
Before COLINS, President Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and LEAVITT, Judge.
OPINION BY Judge FRIEDMAN.
The Committee to Keep Our Public Schools Public, and Roz Spiegel as its Coordinator; Philadelphia Federation of Teachers, AFT, Local 3, AFL-CIO and Ted Kirsch, as its Trustee Ad Litem; National Conference of Firemen and Oilers School Employees Union, Local 1201, SEIU, AFL-CIO; School Police Association of Philadelphia, and Michael Lodise, as its Trustee Ad Litem; School Cafeteria Employees, Local 634, HERE, AFL-CIO and Sam Cook as its Trustee Ad Litem; Barbara Rugletic; Rochelle McQueen; Sara Ortiz; and Barbara Shankin (collectively, Petitioners) have filed an amended petition for review (Petition) in this court's original jurisdiction. The preliminary objections to the Petition filed by The Honorable Mark Schweiker, Governor of the Commonwealth of Pennsylvania and his appointees, agents, representatives and/or designees (Governor Schweiker); Charles B. Zogby, Secretary of Education, Pennsylvania Department of Education (Secretary); School District of Philadelphia (School District); Edison Schools, Inc., and its appointees, agents, representatives and/or designees (Edison); and Chris Whittle, as President and Chief Executive Officer, and his appointees, agents, representatives and/or designees (Whittle) (collectively, Respondents) are now before this *871 court for disposition.[1] We sustain Respondents' preliminary objections and dismiss Petitioners' Petition.
The Petition alleges that, on July 30, 2001, then Governor Tom Ridge and Mayor John F. Street (Mayor) of the City of Philadelphia (City) executed a Memorandum of Understanding (MOU) relating to the control and operation of the School District. Pursuant to the MOU, Governor Ridge awarded a $2.7 million contract to Edison, a private operator of public schools, to perform an analysis of the School District's academic and financial condition. Edison filed its report with Governor Schweiker on October 30, 2001. The report set forth various options for solving the School District's problems, including (1) an option to contract with an independent school management company for the operation of the School District and (2) an option to contract with an outside vendor to implement, support and maintain the School District's information systems. (Petition, ¶¶ 24, 26-27, 31, 47, 76.)
On October 30, 2001, Governor Schweiker signed Act 83 into law. Act 83 amended section 696 of the Public School Code of 1949[2] (Code) to provide for the establishment of a School Reform Commission within thirty days of a declaration by the Secretary that a school district of the first class is distressed. Section 696 of the Code states that the School Reform Commission "shall be an instrumentality of a school district of the first class, exercising the powers of the board of school directors...." 24 P.S. § 6-696(a).
The School Reform Commission shall be responsible for the operation, management and educational program of the school district of the first class ... [and] may enter into agreements necessary to provide for the operation, management and educational programs of the school district of the first class....[3]
24 P.S. § 6-696(e)(1)(2). On October 31, 2001, Governor Schweiker submitted his proposals for the School District to the Mayor. One of the proposals was that Edison be hired to assume central operation and management of the School District and an unspecified number of schools within the School District. (Petition, ¶ 32.)
On November 20, 2001, in the midst of negotiations over the terms and conditions of the takeover, Governor Schweiker and the Mayor announced that Governor Schweiker had rescinded his proposal that Edison operate and manage the School District. However, on December 5, 2001, Governor Schweiker issued a "Philadelphia Time and Responsibility Schedule" (Schedule) providing for the execution of a contract between the School Reform Commission and Edison on December 21, 2001. The Schedule also lists Edison as a participant in the events that were to occur prior *872 to that date. (Petition, ¶ ¶ 33, 35-36, Exh. E.)
On December 21, 2001, the Secretary declared the School District to be distressed. On that same date, Governor Schweiker appointed James Nevels as Interim Chairman of the School Reform Commission, effective December 22, 2001. On January 14, 2002, Governor Schweiker appointed James P. Gallagher and Daniel J. Whelan to be members of the School Reform Commission, and the Mayor appointed Michael Masch and Sandra Dungee Glenn to the Commission. (Petition, ¶¶ 20-23, 37, 39-40.)
On December 18, 2001, Petitioners filed a petition for review with this court. In Count I, Petitioners allege that allowing Edison to execute a contract with the School Reform Commission would violate section 3 of the State Adverse Interest Act (Act), Act of July 19, 1957, P.L. 1017, 71 P.S. § 776.3. (Petition, ¶¶ 60, 77-78.) Section 3 of the Act provides as follows:
No State advisor[4] or State consultant[5] having recommended to the State agency[6] which he serves, either the making of a contract[7] or a course of action of which the making of a contract is an express or implied part, shall, at any time thereafter, have an adverse interest in such contract.
71 P.S. § 776.3.
In Count II, Petitioners allege that allowing Edison to enter into a contract with the School District for tangible intellectual property, including technology systems and curricula, without competitive bidding, would violate section 807.1 of the Code, added by section 3 of the Act of July 31, 1968, P.L. 796, as amended, 24 P.S. § 8-807.1. (Petition, ¶¶ 71, 92.) Section 807.1(a) of the Code provides, in pertinent part, as follows:
All furniture, equipment, textbooks, school supplies and other appliances for the use of the public schools, costing ten thousand dollars ($10,000) or more shall be purchased by the board of school *873 directors only after due advertisement as hereinafter provided....
24 P.S. § 8-807.1(a). Petitioners allege that the cost of the intended contract here would be approximately twenty-five million dollars. (Petition, ¶ 92.)

I. Ripeness
Respondents preliminarily object that the Petition is not ripe because the Petition does not allege that Edison actually has entered into a contract with the School Reform Commission. We agree.
The ripeness doctrine "insists on a concrete context, where there is a final agency action so that the courts can properly exercise their function." Gardner v. Department of Environmental Resources, 658 A.2d 440, 444 (Pa.Cmwlth.1995).
[I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.
Id. (quoting Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)).
Here, until the School Reform Commission enters into a contract with Edison, the School Reform Commission has not taken a final action that would establish a concrete context for the filing of the Petition. Absent a contract, this court, in adjudicating the merits of the Petition, would be entangling itself in an abstract disagreement over the School Reform Commission's authority to enter into a contract with Edison. Also, inasmuch as the School Reform Commission has not entered into a contract with Edison, the School Reform Commission has not formalized a decision, the effects of which Petitioners can feel in a concrete way. Finally, it would be impossible for this court to determine whether a non-existent contract, a contract without terms and conditions,[8] violates section 3 of the Act or section 807.1(a) of the Code.[9]

II. Standing
Even if the matter were ripe for disposition, Respondents object that Petitioners lack standing in this case because, absent a contract, Petitioners are not aggrieved. We agree.
The core concept of standing is that a person who is not adversely affected in any way by the matter challenged is not aggrieved thereby and has no standing to obtain a judicial resolution of the challenge. Wm. Penn Parking Garage, Inc. v. City of Pittsburgh, 464 Pa. 168, 346 A.2d 269 (1975). In order to have standing, a person must show a direct[10] and substantial[11] *874 interest in the challenged action and must show a sufficiently close causal connection between the challenged action and the asserted injury to qualify the interest as immediate rather than remote.[12]Id.
Here, Petitioners have failed to show how the possibility of a contract between the School Reform Commission and Edison has harmed them. Because Petitioners have not shown a direct, substantial and immediate interest in a possible contract, Petitioners lack standing to challenge the non-existent agreement.

III. Section 3 of the Act
Even if this matter were ripe and Petitioners had standing because there was an existing contract, Respondents object that Count I of the Petition fails to state a cause of action under section 3 of the Act. We agree.
Under section 3 of the Act, a "State consultant" who has recommended the making of a "contract" shall not have an adverse interest in such contract. 71 P.S. § 776.3. The word "contract" refers to a contract for the acquisition, use or disposal "by a State agency" of services or of supplies, materials, equipment, land or other personal or real property. 71 P.S. § 776.2(2). The term "State agency" refers to a commission or other part of the executive branch of state government, the Pennsylvania Turnpike Commission, the General State Authority or other state authority. 71 P.S. § 776.2(8).
Section 696(a) of the Act states that the School Reform Commission is an "instrumentality"[13] of the school district with authority to exercise the powers of the local school board. 24 P.S. § 6-696(a). The five members of the School Reform Commission are reimbursed for their reasonable and necessary expenses from the funds of the local school district. 24 P.S. § 6-696(b)(7). Although the Governor appoints four of the five members of the Commission, at least three members, a majority, must be residents of the school district. 24 P.S. § 6-696(a). In that regard, actions of the School Reform Commission shall be by a majority vote, and a majority of the members shall constitute a quorum. 24 P.S. § 6-696(b.1).
Because the School Reform Commission functions as a local school board, is funded by the local school district and is composed of primarily local residents who have the ability under the Act to control the actions taken by the Commission, we would conclude that the School Reform Commission is not a "State agency" under the Act and, thus, that Count I of the Petition fails to state a cause of action.

IV. Section 807.1 of the Code
Even if this matter were ripe and Petitioners had standing because there was an existing contract, Respondents object that Count II of the Petition fails to *875 state a cause of action under section 807.1 of the Code. We agree.
Section 807.1 of the Code states that school boards shall advertise all purchases of $10,000 or more of "furniture, equipment, textbooks, school supplies and other appliances...."[14] 24 P.S. § 8-807.1(a). However, section 696(i)(3) of the Code gives the School Reform Commission the power to suspend the requirements of section 807.1 of the Code. 24 P.S. § 6-696(i)(3). Because the Commission has this power, section 807.1 of the Code does not necessarily apply to the School Reform Commission. Therefore, we would conclude that Count II of the Petition fails to state a cause of action.
Accordingly, the preliminary objections are sustained, and the Petition is dismissed.
Judge COHN did not participate in the decision in this case.

ORDER
AND NOW, this 29th day of July, 2002, it is hereby ordered that Respondents' preliminary objections are sustained, and Petitioners' amended petition for review is dismissed.
NOTES
[1] In ruling on preliminary objections, this court must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced from them. Envirotest v. Department of Transportation, 664 A.2d 208 (Pa.Cmwlth. 1995). This court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations or expressions of opinion. Id. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them. Id.
[2] Act of March 10, 1949, P.L. 30, added by, section 3 of the Act of April 27, 1998, P.L. 270, as amended, 24 P.S. § 6-696.
[3] The School Reform Commission has the power to "enter into agreements with persons or for-profit or nonprofit organizations to operate one or more schools" or to provide "educational or other services to or for the school district." 24 P.S. § 6-696(i)(2), (5).
[4] Section 2(7) of the Act defines a "State Advisor" as follows:

A person who performs professional, scientific, technical or advisory service for a State agency or serves as a member of an advisory board, professional licensing board or similar part of a State agency and who receives no compensation for his service other than reimbursement for expenses incurred by him in furnishing such service.
71 P.S. § 776.2(7).
[5] Section 2(9) of the Act defines a "State Consultant" as a "person who, as an independent contractor, performs professional, scientific, technical or advisory service for a State agency and who receives a fee, honorarium or similar compensation for such service." 71 P.S. § 776.2(9).
[6] Section 2(8) of the Act defines a "State Agency" as follows:

A department, board, commission or other part of the executive branch of the government of the Commonwealth or the Pennsylvania Turnpike Commission, the General State Authority or other State authority, created by a statute which declares in substance that such authority performs or has for its purpose the performance of an essential governmental function and that its bonds shall not pledge the faith or credit or be obligations of the Commonwealth.
71 P.S. § 776.2(8).
[7] Section 2(2) of the Act defines a "Contract" as follows:

A contract or arrangement for the acquisition, use or disposal by a State agency of services or of supplies, materials, equipment, land or other personal or real property. The term "contract" shall not mean an agreement between the Commonwealth or a State agency as one party and a State advisor, consultant or employe as the other party, concerning his expense, reimbursement, fee, salary, wage, retirement benefit, tenure or other matters touching his personal service to the Commonwealth or State agency.
71 P.S. § 776.2(2).
[8] Although Petitioners suggest that the contract will entail the operation and management of the School District, in ruling on preliminary objections, this court need not accept as true unwarranted inferences from facts. See Envirotest.
[9] Petitioners argue in their brief that, under Flaherty v. Port Authority of Allegheny County, 450 Pa. 509, 299 A.2d 613 (1973), the lack of a contract does not preclude consideration of whether there has been a violation of section 3 of the Act. However, in Flaherty, the court knew the terms and conditions of the contract because the Port Authority had solicited bids for a particular contract and Westinghouse had submitted a bid. As a result, the court could determine whether execution of the contract would violate section 3 of the Act. That is not the case here.
[10] The requirement that an interest be direct means that the person claiming to be aggrieved must show causation of the harm to the interest by the matter of which he complains. Wm. Penn Parking.
[11] The requirement of a substantial interest means that the individual's interest must have substance, i.e., there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law. Id.
[12] The possibility that an interest will suffice to confer standing grows less as the causal connection grows more remote. Id.
[13] In Doughty v. City of Philadelphia, 141 Pa.Cmwlth. 659, 596 A.2d 1187 (1991), this court stated that the word "instrumentality" denotes a means to achieving a purpose and that a body's "use of an entity ... to achieve a purpose does not in itself transform the entity into [that body's] agency." Id. at 1190 (emphasis added). Here, however, there are other factors that lead us to conclude that the School Reform Commission is not a "State agency" under the Act.
[14] As indicated above, Petitioners allege that the School Reform Commission intends to enter into a twenty-five-million-dollar contract with Edison for tangible intellectual property, including technology systems and curricula. (Petition, ¶ 92.)