989 A.2d 69 (2010)
VALENTINE COMPANY (f/k/a Nichols & Associates, Inc.), Petitioner
v.
COMMONWEALTH of Pennsylvania, Respondent.
No. 562 F.R. 2006.
Commonwealth Court of Pennsylvania.
Argued November 5, 2009.
Decided January 15, 2010.
*70 Maura Fay McIlvain, Philadelphia, for petitioner.
John J. Butchar, Sr. Deputy Attorney General, Harrisburg, for respondent.
BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, LEAVITT, Judge, and BUTLER, Judge.
OPINION BY President Judge LEADBETTER.
Valentine Company, Inc. (f/k/a Nichols & Associates, Inc.), a licensed surplus lines licensee for Temple University,[1] has filed exceptions to this court's panel opinion and order, which affirmed as modified the Board of Finance and Revenue's denial of its petition for relief.[2] In our initial opinion, we concluded that Temple University was not immune from the 3% surplus lines tax obligation imposed pursuant to Article XVI of The Insurance Company Law of 1921 (commonly referred to as the Surplus Lines Act)[3] on premiums that Temple paid to a surplus lines insurer for the 2004 tax year. After review, we deny the exceptions.
The underlying facts, which are set forth more fully in the initial panel opinion, need not be restated here. For the present analysis, however, it is sufficient to note that Valentine, apparently acting as a broker, arranged for Lexington Insurance Company, a non-admitted surplus lines insurer, to issue a policy to Temple for the period July 1, 2004, through July 1, 2005.[4] Temple paid premiums in the amount of $6,800,000 for the policy. Valentine did not collect the surplus lines tax from Temple; it reported the gross premiums paid by Temple on its tax return for 2004 but deducted those premiums from the amount *71 of gross premiums taxable.[5]
The Department of Revenue mailed a settlement to Valentine, assessing the 3% surplus lines tax on the premiums paid by Temple; this resulted in additional tax due in the amount of $204,000. Valentine filed a petition for resettlement, contending that Temple was immune from the tax as an instrumentality of the Commonwealth. Both the Department and the Board denied Valentine's subsequent petitions. This court affirmed on appeal but modified the Board's order to apply only to the tax year ending December 31, 2004, and thereafter. These exceptions followed.
First, starting with the general principle that the Commonwealth and its agencies are generally immune from taxation absent an express intent to the contrary, Valentine reiterates its argument that Temple is immune from tax because the Temple University-Commonwealth Act[6] both designates Temple as an "instrumentality of the Commonwealth to serve as a State-related institution in the Commonwealth system of higher education,"[7] and enables it to perform governmental functions, such as the provision of educational opportunities and a public hospital, and service of indigent patients through unreimbursed medical care. In further support of this argument, Valentine reasserts that Temple is immune from other forms of state taxes, such as the sales and use tax and the realty transfer tax. According to Valentine, this court erred in relying on Mooney v. Board of Trustees of Temple University of the Commonwealth System of Higher Education, 448 Pa. 424, 292 A.2d 395 (1972), and Doughty v. City of Philadelphia, 141 Pa.Cmwlth. 659, 596 A.2d 1187 (1991), to conclude that Temple was liable for the tax. We have reexamined our initial decision in this case, as well as Mooney and Doughty. Discerning no legal error, we adopt and reaffirm the analysis in our initial opinion, and thus reject Valentine's "state instrumentality" argument.
Valentine also suggests that, while the Legislature has amended the Surplus Lines Act three times since the Department of Revenue first confirmed its immunity in 1989; it has not amended the Act to expressly revoke its immunity. According to Valentine, if the Department's interpretation of the statute were contrary to legislative intent, the legislature would have amended the Act to clarify its application. In this regard, Valentine relies on Northeastern Building Registered v. Commonwealth, 41 Pa.Cmwlth. 403, 399 A.2d 449, 452 (1979) [stating, that "when the legislature, in subsequent legislation, chooses to use the same disputed language as it had used in previous legislation, and where, as here, that language has been interpreted by the Attorney General, an administrative agency and by a court, the legislature may be presumed to have adopted those interpretations."] (citations omitted). We reject this argument for several reasons.
The 1989 written confirmation of immunity that Valentine relies on is a letter written by Charles Fisher, an employee in the Department's Specialty Taxes Unit, to Johnson & Higgans, Temple's former insurance broker. In that letter, Fisher interprets a 1966 opinion of the *72 Attorney General to provide that Commonwealth instrumentalities are exempt from the tax imposed by the Act preceding the current Surplus Lines Act.[8] Stipulation of Facts, Exhibit H.[9] Not only was this letter issued under the former act, which contained different language, but it cannot be equated with a published judicial opinion or support the conclusion that any subsequent failure to amend the statutory language indicates that the Department's interpretation was in accord with legislative intent. Indeed, while there is no dispute that the Legislature could have knowledge of the 1966 Attorney General opinion, as the Commonwealth points out, the Legislature is unaware of the tax status of individual entities and would have no reason to know of the communication between a tax officer and broker regarding interpretation of the Act. Moreover, as we correctly noted in our panel decision, the Commonwealth is not bound by a past erroneous application of the Act and is not estopped from correcting its error by presently imposing the tax. See Valentine, 973 A.2d at 1112 n. 17.
Valentine next reiterates its argument that until the Department obtains a declaratory judgment from this court pursuant to Section 204(a)(2) of the Commonwealth Attorneys Act,[10] 71 P.S. § 732-204(a)(2), it is bound by the Attorney General's 1966 opinion and, therefore, precluded from imposing the tax on Temple. Although this argument has been waived, see Valentine, 973 A.2d at 1106 n. 7, we note that the 1966 Attorney General opinion is clearly not applicable here. Not only was that opinion based upon different language in a prior act, but it simply does not encompass instrumentalities of the Commonwealth. The opinion addressed only the tax liability of incorporated charitable, religious, and educational institutions as well as unincorporated charitable, religious and educational institutions, municipalities and authorities. Therefore, even if the argument had been properly preserved, it would not command a different result.
Finally, for the reasons stated in our initial opinion, we reject Valentine's contention that any change to Temple's tax status should occur only after a final determination by this Court.
Based upon the foregoing, Valentine's exceptions are denied.

ORDER
AND NOW, this 15th day of January, 2010, Valentine Company's exceptions to *73 this court's opinion and order in Valentine Company v. Commonwealth, 973 A.2d 1101 (Pa.Cmwlth.2009) are hereby DENIED. Judgment shall be entered in favor of the Commonwealth.
NOTES
[1] Specifically, Temple University of the Commonwealth System of Higher Education and a number of its affiliates, including Temple University Hospital, Inc. and Temple University Children's Medical Center (collectively referred to as Temple).
[2] See Valentine Co., Inc. v. Commonwealth, 973 A.2d 1101 (Pa.Cmwlth.2009).
[3] Act of May 17, 1921, P.L. 682, as amended, added by the Act of December 18, 1992, P.L. 1519, 40 P.S. §§ 991.1601-1625.
[4] A surplus lines carrier is an insurer that is not licensed to do business in Pennsylvania (also known as a non-admitted insurer) but has been designated by the insurance commissioner to provide insurance to Pennsylvanians, which they would not otherwise be able to procure from a licensed or admitted insurer. Valentine. The policies here provided professional liability insurance for the provision of healthcare services. According to Valentine, medical malpractice liability insurance is a line of coverage that is not available through carriers licensed in Pennsylvania.
[5] The Surplus Lines Act provides that the "surplus lines licensee shall collect from the insured or the producing broker the amount of the tax at the time of delivery of the initial policy. . . ." Section 1621(c), 40 P.S. § 991.1621(c). Valentine believed the premiums were not subject to tax. See Valentine, 973 A.2d at 1104 n. 4.
[6] Act of November 30, 1965, P.L. 843, 24 P.S. §§ 2510-1-2510-12.
[7] 24 P.S. § 2510-2 (emphasis added).
[8] The 1966 Attorney General's opinion interpreted the Act of January 24, 1966, P.L. (1965) 1509, repealed by the Act of December 18, 1992, P.L. 1519. In that opinion, the Attorney General concluded that incorporated charitable, religious, and educational institutions were subject to the tax, while unincorporated charitable, religious and educational institutions, municipalities and authorities were exempt. The Attorney General's opinion rested on the former act's definition of "person" as well as the general principle that political subdivisions such as counties, municipalities and authorities, are presumed to be exempt from taxation absent an express intent to the contrary. See Stipulation of Facts, Exhibit G.
[9] In 1993, a taxing officer in the Department's Bureau of Corporation of Taxes issued a similar opinion in revising Temple's resettlement. Id., Exhibit I.
[10] Act of October 15, 1980, P.L. 950. Section 204(a)(2) provides:

If the Governor or the head of any Commonwealth agency disagrees with the legal advice rendered by the Attorney General, the Governor or the head of the Commonwealth agency may seek a declaratory judgment in the Commonwealth Court pursuant to 42 Pa.C.S. Ch. 75 Subch. C (relating to declaratory judgments). The legal advice of the Attorney General shall be binding until the Commonwealth Court issues a final order on the petition requesting the declaratory judgment.